FILED
 2009 Mar-31 PM 12:14
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JIMMY DILL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. CV 07-B-2239-S |
| | ) |
| **COMMISSIONER RICHARD ALLEN;** | ) |
| **GRANT CULLIVER, Warden, Holman** | ) |
| **Correctional Facility,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motion to Dismiss. (Doc. 6.)[1] Plaintiff Jimmy Dill has sued defendants Richard Allen and Grant Culver, pursuant to 42 U.S.C. § 1983, seeking "declaratory and injunctive relief to prevent the Defendants from using Alabama's current lethal injection procedures to execute him." (Doc. 1 ¶ 1.) Plaintiff alleges that Alabama's lethal injection procedures constitute cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution. (*Id*. ¶ 36.) Upon consideration of the record, the defendants' submission,[2] and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 6), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]Plaintiff did not file any opposition to defendants' Motion to Dismiss.

## I. MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993)(citations omitted); *see also Rivell v. Private Healthcare Systems, Inc.*, 520 F.3d 1308, 1309 (11th 2008).

> [T]he complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, [550 U.S. 544, ___, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, 127 S. Ct. at 1965). This rule does not "impose a probability requirement at the pleading stage." *Twombly*, 127 S. Ct. at 1965. Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id*. "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, 127 S. Ct. at 1965).

*Rivell*, 520 F.3d at 1309-10.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001)(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998)(citing *Jackam v. Hospital Corp. of Am.*

*Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)), *cited in McClendon v. May*, 37 F. Supp. 2d 1371, 1375 (S.D. Ga. 1999).

## II.  STATEMENT OF FACTS

On May 24, 1989, plaintiff was convicted of the robbery-murder of Leon Shaw in violation of Ala. Code § 13A-5-40(a)(2).  His conviction was affirmed on direct appeal.  *See Dill v. State*, 600 So. 2d 343 (Crim. App. 1991), *aff'd* 600 So. 2d 372 (Ala. 1992), *cert. denied* 507 U.S. 924 (1993).  His motions for post-conviction relief were denied in the state and federal courts.  *See Dill v. Allen*, 488 F.3d 1344 (11th Cir.), *cert. denied* 128 S. Ct. 651 (2007); *Dill v. State*, 717 So. 2d 826 (Crim. App. 1995), *appeal after remand* 767 So. 2d 366 (Crim. App. 1999), *cert. denied* (Ala. 2000).

The Alabama Court of Criminal Appeal found the following facts on direct appeal:

The record reveals that the victim, Leon Shaw, drove to Terry Dill's house on the afternoon of February 8, 1989.  Shaw was not supposed to be driving because he was serving time at the Federal Work Release Center for a drug violation.  Shaw was, however, allowed to leave the center to go to work.  He operated the Rose Boutique, which he owned with his wife, Junatha Shaw.  Terry Dill left the house and got in the car with Shaw.  [Plainitff] was in the front seat with Shaw.  Shaw told Terry Dill that [plaintiff] wanted to buy drugs from Shaw.

The testimony reveals that Terry Dill was a former cocaine addict who had sold cocaine with Shaw for four years.  Shaw would pay Terry Dill to bring him customers.

Shaw, Dill, and [plaintiff] ran into Jacqueline Ball and Freddie Carter near a church on 85th Street.  Shaw was still driving the car and Terry Dill was sitting in the backseat behind him.  [Plaintiff] was still in the front passenger seat.  Apparently, Shaw and [plaintiff] got out of the car.  Shaw talked to Jacqueline Ball, and [plaintiff] talked to Freddie Carter.  Shaw was carrying

3

a black pouch in which he normally kept cocaine and money. Shaw had at least $200 in his hand.

After Ball and Carter left, [plaintiff] asked Shaw if he would give him some cocaine until he could get the money to pay for it. Shaw refused. They left for Druid Hills, where the work release center was located, because Shaw had to sign in at the center. When they got to Druid Hills, Shaw's beeper went off. They all got out of the car and Shaw made a telephone call. They went to the Curb Market and Shaw bought wine coolers. Shaw had a folded wad of money. When they left the store, Shaw had everyone in the car switch places so that the people at the center would not see him driving. Terry Dill was now driving and [plaintiff] was in the backseat. Terry Dill drove to the center.

[Plaintiff] again asked Shaw for cocaine. Shaw told him that he would give him the cocaine when [plaintiff] got some money. He also showed [plaintiff] a half ounce of cocaine. [Plaintiff] asked for cocaine again when they pulled up to the center. Shaw went to the building. He pulled a big wad of money out of his pocket. There was so much money that it could not be rolled up. He told the case manager at the center that he had just left the Rose Boutique and was going to make a deposit.

While Shaw was inside the center, [plaintiff] said to Terry Dill, "You don't believe I'll rob him or shoot him." [Plaintiff] continued to talk about killing Shaw. When Shaw got back in the car, [plaintiff] said that he would shoot Shaw if he did not give him some cocaine. After they drove off, there was a gunshot. Blood spurted onto Terry Dill. [Plaintiff] had a small automatic pistol, approximately .25 or .22 caliber. [Plaintiff] told Terry Dill to be quiet and keep driving. [Plaintiff] pulled the trigger as if he was going to shoot Shaw again. They eventually stopped in an alley. [Plaintiff] searched Shaw and took the money and cocaine. [Plaintiff] then got a rag and started wiping fingerprints off of the car. Terry Dill ran away. [Plaintiff] also ran away. Terry Dill called his girlfriend to pick him up. He went home later that evening.

Shaw was taken to the hospital where emergency brain surgery was performed. The bullet entered the left, back side of his brain. Shaw was unconscious. He had abnormal movement in his extremities which indicates that the brain is functioning extremely abnormally. Both a feeding tube and breathing tube were inserted. He was discharged from the hospital on April 26, 1989, because there was nothing more the hospital could do for him. Shaw

> could not function independently and required round-the-clock care. Shaw eventually pulled the feeding tube out. However, his doctor said he would not replace the tube since he could eat and drink by mouth. Shaw was readmitted to the hospital on October 31, 1989. He never regained consciousness and died on November 22, 1989. Shaw's doctors testified that he died of complications from a gunshot wound to the head.
>
> Forensic evidence revealed that the bullet removed from Shaw's head was consistent with a .22 caliber projectile. The characteristics of the wound were consistent with a contact gunshot wound.
>
> [Plaintiff] gave a statement to the police on February 18, 1989. He stated that he and Terry Dill were with Shaw and that they drove to North Birmingham. Terry Dill was driving the car, Shaw was on the front passenger seat, and [plaintiff] was in the backseat behind Terry Dill. [Plaintiff] stated that Shaw's door opened and that he heard a shot from behind Shaw. [Plaintiff] was then asked how Shaw was shot from behind without the window being shot out of the car. [Plaintiff] then stated that Shaw was actually getting into the car when someone ran up to Shaw's door. [Plaintiff] stated that he heard a gunshot. He and Terry Dill got out and ran. [Plaintiff] then stated that after hearing the shot, they drove off and a car followed them. They drove to an alley, jumped out of the car, and ran away. [Plaintiff] stated that Shaw had some cocaine in a black bag but he did not see any money.

*Dill*, 600 So. 2d at 350-51 (internal quotations and citations omitted).

Following his conviction, Dill was sentenced to death. He contends that, "upon information and belief[,] Alabama uses drugs to achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The chemicals used include Thiopental, Pavulon, and Potassium Chloride. This combination will likely subject [plaintiff] to an excruciatingly painful and tortuous death." (Doc. 1 ¶ 24.) He further alleges:

> [Defendants] are acting under color of Alabama law in undertaking to execute Plaintiff Jimmy Dill by lethal injection using an insufficient, improperly designed and improperly administered procedure for inducing and maintaining anesthesia prior to execution, and by using chemicals that cause

5

> severe pain in the process of causing death, such that Plaintiff will unnecessarily suffer an excruciating death in violation of his right to be free from cruel and unusual punishment. . . .
>
> Although it is possible to conduct executions in a constitutionally compliant manner, Defendants have chosen not to do so. While Defendants could select additional or alternative chemicals and/or retain qualified medical personnel to administer its chosen chemicals to ensure the constitutionality of its lethal injection procedure, defendants have failed to do so and have acted with deliberate indifference.

(Doc. 1 ¶¶ 4-5.) He seeks a declaratory judgment that Alabama's procedures constitute cruel and unusual punishment and an injunction prohibiting "Defendants from executing Plaintiff with inadequate anesthesia and execution procedures that violate [his] right to be free from cruel and unusual punishment." (Doc. 1 ¶ 40.)

### III.  DISCUSSION

Defendants contend that plaintiff's Complaint is due to be dismissed because it is time-barred and because its fails to state a claim for relief based on Alabama's lethal injection protocol. For the reasons set forth below, the court agrees.

### A.  STATUTE OF LIMITATIONS

Defendants contend that plaintiff's claim is barred by the statute of limitations. (Doc. 6 at 10-14.)

The statute of limitations for § 1983 claims in Alabama is two years. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989); Ala. Code § 6-2-38(*l*). The Eleventh Circuit has held that the statute of limitations for a § 1983 action challenging the method of execution "accrues on the later of the date on which state review is complete, or the date on which the

capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). Plaintiff's death sentence became final following his direct appeal on February 22, 1993. *See Dill*, 507 U.S. 924 (1993). Therefore, any § 1983 claim was time-barred after February 12, 1995.

However, Alabama changed its "preferred method of execution from electrocution to lethal injection in July 2002." *McNair v. Allen*, 515 F.3d 1168, 1177 (11th Cir. 2008)(citing *Jones v. Allen*, 485 F.3d 635, 637 (11th Cir. 2007)("In July 2002, while Jones's federal habeas petition was pending, the Alabama Legislature changed the State's method of execution from electrocution to lethal injection. The statute gave death-row inmates 30 days to elect electrocution instead. After that period of time, the State's sole method of execution would be lethal injection. *See* Ala. Code § 15-18-82. (2006 Cumulative Supp.))). Thus, plaintiff could have filed a § 1983 claim based on this change in the method of execution on or before July 2004. *McNair*, 515 F.3d at 1177.

Plaintiff filed this action on December 12, 2007. Therefore, his § 1983 claim is time-barred and due to be dismissed.

**B. LACHES**

Defendants also argue that plaintiff's claim is barred by laches. (Doc. 6 at 14-20 [citing, *inter alia*, *Grayson v. Allen*, 491 F.3d 1318 (11th Cir.), *cert. denied* 128 S. Ct. 6 (2007)].)

The court notes that "the doctrine of laches cannot be applied so as to permit relief when the statute of limitations applicable to the analogous legal claim has run." *Cannon v. University of Health Sciences/The Chicago Medical School*, 710 F.2d 351, 358 (7th Cir. 1983)(quoting *Russell v. Todd*, 309 U.S. 280, 289 (1940)("when the jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations")); *see also National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1326-27 (11th Cir. 2007)("where a party's legal remedies are time-barred, that party's concurrent equitable claims generally are barred under the concurrent remedy doctrine").

Therefore, because plaintiff's § 1983 claim is barred by the applicable statute of limitations, the court need not consider whether it would also be barred by laches.[3]

**C. ALABAMA'S PROTOCOL**

Plaintiff argues that Alabama's lethal injection protocol violates his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 1 ¶ 36.) Specifically, he challenges (1) defendants' use of an improperly designed and improperly administered procedure for inducing and

---

[3]In *Grayson*, the district court found that plaintiff's § 1983 claim challenging his method of execution was not time-barred. *Grayson v. Allen*, 499 F. Supp. 2d 1228, 1235 (M.D. Ala. 2007). The Eleventh Circuit declined to address the statute-of-limitations issue on appeal. *See Grayson*, 491 F.3d 1318, 1326 n.5 (11th Cir. 2007).

maintaining anesthesia prior to execution and (2) their use of chemicals that cause severe pain in the process of causing death. (*Id.* ¶¶ 25-29, 36.)

Last year the United States Supreme Court decided *Baze v. Rees*, 128 S. Ct. 1520 (2008). In *Baze*, the majority held that the risk of improper administration of thiopental, the first drug used in the lethal-injection execution, did not render Kentucky's three-drug protocol cruel and unusual in violation of the Eighth Amendment. *Id.* at 1533. The court also held that Kentucky's failure to adopt proposed, allegedly more humane alternatives to its three-drug protocol did not demonstrate cruel and unusual punishment. *Id.* at 1534. Following *Baze*, plaintiff's § 1983 claim based on the cruel and unusual punishment of lethal injection is barred without a showing of substantial risk of severe pain. *See id.* at 1537 ("A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard."). This plaintiff has failed to do.

Justice Ginsberg, in her dissenting opinion, commented on the fact that Alabama's protocol calls for checks to insure that the first drug anesthetizes the condemned inmate. *Id.* at 1571 (Ginsberg, J., dissenting). She noted:

> In Alabama, a member of the execution team begins by saying the condemned inmate's name. If there is no response, the team member will gently stroke the

9

>condemned inmate's eyelashes.  If there is no response, the team member will then pinch the condemned inmate's arm.

*Id*. (internal quotations and citations omitted).  Justice Ginsberg wrote that these additional measures "provide a degree of assurance-missing from Kentucky's protocol – that the first drug has been properly administered.  They are simple and essentially costless to employ, yet work to lower the risk that the inmate will be subjected to the agony of conscious suffocation caused by pancuronium bromide and the searing pain caused by potassium chloride." *Id*.

The *Baze* decision effectively forecloses plaintiff's claim based on Alabama's lethal-injection protocol.  Therefore, even if this court were to find that plaintiff's Complaint was timely filed, the court would dismiss his § 1983 on the ground that it fails to state a claim for relief.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that plaintiff Complaint is due to be dismissed as time-barred and for failure to state a claim upon which relief can be granted.  An Order granting defendants' Motion to Dismiss will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of March, 2009.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE